IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JEREMI BLAKE                                                                                        PLAINTIFF

v.                                              Civil No. 4:16-cv-4078

WARDEN MOORE, LIEUTENANT
GOLDEN ADAMS, and STEVEN KING                                                   DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendants Warden Moore and Lieutenant Golden Adams. (ECF No. 37). Plaintiff Jeremi Blake has a filed a Response. (ECF Nos. 53, 55). The Court finds this matter ripe for consideration.

### I. BACKGROUND

This is a civil rights action filed *pro se* by Plaintiff under 42 U.S.C. § 1983. Plaintiff's claims in this action arise from alleged incidents that occurred in 2016, while he was incarcerated in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas.[1] Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was booked into the MCDC on July 8, 2016, and placed in Max Alpha Cell #13. (ECF No. 1, p. 3). The following day, Plaintiff asked to be moved to protective custody "[b]ecause of [his] past history in general population settings and because he feared for his safety." *Id.* On July 9, 2016, Plaintiff was placed in protective custody and moved to Max Echo Cell #5. *Id.* He was released from the MCDC on October 17, 2016.

Prior to Plaintiff being booked into the MCDC, physicians with the TDCJ prescribed him

---

[1] Plaintiff is currently incarcerated in the Texas Department of Criminal Justice ("TDCJ") – Alfred D. Hughes Unit in Gatesville, Texas.

1

400mg of Carbamazepine (Tegretol) and 20mg of Citalopram (Celexa) for daily treatment of his mental health conditions. (ECF No. 53-1). Plaintiff continued taking these medications after he was booked into the MCDC.

During his incarceration in the MCDC, Plaintiff filed a total of twenty-five grievances using the kiosk provided by the jail.[2] The following thirteen grievances relate to Plaintiff's claims in this lawsuit:

- #1,062,430: "grieving the fact that back in MAX E pod, we are not given outdoor recreation." (ECF No. 39-4, p. 10).

- #1,065,070: "grieving the conditions of confinement in MAX E pod . . . shower area is disgusting and has not been cleaned . . . no toilet in the dayroom they do not leave our cell open while we get our hour of recreation… I have nowhere to go…" (ECF No. 39-4, p. 11).

- #1,078,497, #1,078,533, and #1,081,376: concerning denial and reinstatement of commissary privileges. (ECF No. 39-4, pp. 12-14).

- #1,092,167, #1,136,770, #1,136,780, #1,139,022, and #1,147,185: regarding inadequate responses to grievances. (ECF No. 39-4, pp. 15, 17-19, 22).

- #1,095,389: claiming his recreation time was taken away for two days because of the conduct of another inmate. (ECF No. 39-4, p. 16).

- #1,219,546 and #1,219,547: filed against Separate Defendant King for denial of medical care. (ECF No. 39-4, pp. 24-25).

In addition to these grievances, on August 26, 2016, Plaintiff placed a medical request, asking

---

[2] Grievances filed by Plaintiff unrelated to this lawsuit include: #1,042,060, #1,042,086, #1,042,106, #1,042,125 and #1,042,151 (challenging the United States' jurisdiction over him) (ECF No. 39-4, pp. 1-5); #1,042,207 (claiming his name is a trademark and that officers at the MCDC do not have authority to use it) (ECF No. 39-4, p. 6); #1,042,303 (stating Plaintiff is not protected by the Constitution) (ECF No. 39-4, p. 7); #1,057,309 and #1,062,417 (reiterating Plaintiff's contention regarding the use of his name and requesting MCDC officers stop using it) (ECF No. 39-4, pp. 8-9); #1,142,622 and #1,142,625 (claiming he and other inmates had been "rudely woke[n] up" and an MCDC officer "said that he was thinking about using force" on Plaintiff) (ECF No. 39-4, pp. 20-21); #1,212,276 (claiming another inmate had tried to set him up by putting something in the lock of his cell) (ECF No. 39-4, p. 23).

that his Celexa dosage be increased because it was not helping his depression. (ECF No.53-2, p. 1). A nurse responded and stated that Plaintiff needed to give the medication more time to start working. On September 15, 2016, an MCDC officer was informed by another inmate that Plaintiff was storing his psych medication in his cell. A search of Plaintiff's cell was conducted and according to the MCDC disciplinary report:

> Upon searching inmate [Plaintiff's] cell . . . several items inside the cell . . . were unauthorized and are considered contraband. The prescription medication that is issued to [Plaintiff] were located in another inmate's box. It was confirmed through [Separate Defendant] King that the medicine was in fact inmate [Plaintiff's]. Also when looking through [Plaintiff's] property we found a pair of finger nail clippers which are also unauthorized. We moved [Plaintiff] to max echo without further incident.

(ECF No. 53-2, p. 20). Plaintiff was charged with stealing or being in possession of stolen property, possession of an item not authorized for retention, and misuse of authorized medication. *Id.* On September 19, 2016, Plaintiff entered a plea of guilty to the infractions and the MCDC Disciplinary Committee ordered that Plaintiff be moved to segregation for thirty days which included the loss of commissary, visitation, and mail privileges during this time. *Id.*

On September 19, 2016, Separate Defendant King[3] entered a notation on Plaintiff's medical progress notes which reads in part: "Due to the fact that [Plaintiff] is not taking his prescribed medication as directed and is hoarding and using them as currency, [Nurse Practitioner] Foltz directs the medications to be discontinued." (ECF No. 35-7). Underneath the notes there is an illegible signature. It is not clear if this signature is Separate Defendant King's or that of the Nurse Practitioner Foltz.[4] Also on September 19, 2016, Plaintiff's medications were discontinued without any evaluation of Plaintiff for potential adverse reactions that may occur as a result of the cessation of his medications.

---

[3] Separate Defendant King is a registered nurse and is the medical team supervisor at the MCDC. Plaintiff's claims against Separate Defendant King are not addressed in this opinion.

[4] Nurse Practitioner Foltz is not a named defendant in this lawsuit.

On September 23, 2016, Plaintiff submitted a medical request stating: "I think that I am having a mental breakdown, please call me to psych or get me some help because I have no way of dealing with anything that I am feeling." (ECF No. 53-2, p. 2). Separate Defendant King responded as follows: "You were on medication to help with this. You chose to refuse your meds after being caught hoarding your medication for sale. Your medication was discontinued due to this. It will not be restarted." *Id.* The following day, Plaintiff filed a grievance against Separate Defendant King, alleging that he had denied Plaintiff proper medical attention. (ECF No. 53-2, pp. 5-6). Separate Defendant King responded to the grievance and informed Plaintiff that he could contact the corporate headquarters for his employer in Chattanooga, Tennessee. *Id.*

Plaintiff filed his Complaint on August 15, 2016, alleging that Defendants Moore and Adams subjected him to the following unlawful conditions of confinement at the MCDC:

> [L]ockdown in a 8' x 12' cell 23 hours a day . . . no access to outside recreation . . . no access to television or newspapers, no visitation privileges, no commissary privileges, rat and roach infestations, no cells in Max Echo have windows . . . the dayroom in which we are allowed '1 hour out' per day has not bathroom or toilette, forcing plaintiff to shower in the same shower inmates urinate and defecate in.

(ECF No. 1). In addition, Plaintiff alleged that the MCDC had an unconstitutional classification system because "pre-trial detainees are housed with sentenced inmates . . . misdemeanor inmates are housed with felons . . . [and] state inmates are housed with federal inmates." *Id.* at 4. Plaintiff claimed further that regardless of the classification of inmates, all who are assigned to Max Echo are treated as if they are on punitive segregation. *Id.*

On June 21, 2017, Plaintiff filed an Amended Complaint, reasserting his conditions of confinement claims against Defendants Moore and Adams, naming Separate Defendant King as an additional defendant, and alleging that all Defendants denied him adequate medical care.[5] (ECF No.

---
[5] On July 11, 2018, the Court entered a Memorandum Opinion granting in part and denying in part Separate Defendant King's motion for summary judgment. (EC No. 59). In the opinion, the Court dismissed Plaintiff's official capacity

4

19). Plaintiff also added claims for inadequate training of employees and contractors in providing recreation, sanitized living, and the dispensing of medication, and interference with medical treatment as a punitive measure. *Id.* at p. 3. Plaintiff proceeds against Defendants Moore and Adams in both their individual and official capacities and seeks compensatory and punitive damages. *Id.* at p. 6.

On February 12, 2016, Defendants Moore and Adams filed the instant motion. Defendants argue they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) there is no proof that Defendant Moore or Adams were personally involved in any of the alleged constitutional violations; (3) there is no constitutional right to the answering of grievances; (4) Plaintiff was not subjected to unconstitutional conditions of confinement; (5) Defendants were not deliberately indifferent to Plaintiff's medical needs; (6) Defendants are entitled to qualified immunity; and (7) there is no basis for official capacity liability. (ECF No. 37).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby,*

---

claims against Separate Defendant King but found there were genuine issues of material fact related to Plaintiff's individual capacity claims against him for denial of medical care and retaliation.

*Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III. DISCUSSION**

Defendants Moore and Adams contend that they are entitled to summary judgment on a number of Plaintiff's claims because he failed to exhaust his administrative remedies as to those claims. Defendants Moore and Adams also contend that they are entitled to summary judgment on Plaintiff's remaining claims for various reasons. The Court will first address Defendants' failure to exhaust argument, and then will separately address any of Plaintiff's remaining claims.

**A. Failure to Exhaust Administrative Remedies**

Defendants Moore and Adams argue that Plaintiff failed to exhaust his administrative remedies with respect to the following claims: (1) being placed on lockdown for 23 hours a day; (2) no access to television or newspapers; (3) no visitation privileges; (4) rat and roach infestations; (5) no windows; (6) pre-trial inmates being housed with sentenced inmates; (7) misdemeanor inmates being housed with felony inmates; (8) inadequate selection and training of employees and contractors for recreation, sanitary living conditions, and dispensing medication; and (9) interference with medical treatment as a punitive measure. (ECF No. 38, p. 3).

The Prison Litigation Reform Act ("PLRA") provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, the United States Supreme Court stated, "to properly exhaust

administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." 549 U.S. 199, 218 (2007) (internal quotation marks omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007). The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001)) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

There is no dispute that the MCDC had a grievance procedure in place for detainees to use at the time Plaintiff was incarcerated in the MCDC. (ECF No. 39-1, pp. 1-3). Plaintiff only filed grievances relating to the following claims in this lawsuit: lack of outdoor recreation, unsanitary conditions of the shower in Max E Pod, no access to a toilet in the dayroom during recreation, lack of commissary privileges, inadequate responses to grievances, no recreation for two days, and denial of medical care.

Plaintiff has not alleged that Defendant Moore or Adams or any other MCDC officer prevented him from utilizing the grievance procedure or that they failed to comply with the procedure itself. Therefore, neither of the exceptions to the PLRA's exhaustion requirement apply and the following

claims which Plaintiff failed to administratively exhaust should be dismissed without prejudice[6]: (1) being placed on lockdown for 23 hours a day; (2) lack of access to television or newspapers; (3) no visitation privileges; (4) rat and roach infestations; (5) no windows; (6) pre-trial inmates housed with sentenced inmates; (7) misdemeanor inmates housed with felony inmates; (8) inadequate selection and training of employees and contractors for recreation, sanitized living conditions, and dispensing medication; and (9) interference with medical treatment as a punitive measure. Accordingly, Defendants are entitled to summary judgment on these claims.

The Court will now turn to Plaintiff's remaining claims.

### B. Inadequate Responses to Grievances

Plaintiff alleges that his constitutional rights were violated when Defendants Moore and Adams failed to adequately respond to his grievances.

The law on this issue is clear. "Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the grievance procedure is not actionable under § 1983." *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). "Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman v. White*, 112 F. Supp. 2d 534, 542 (E.D. Va. 2000) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Id.* (citation omitted). "[A]ny alleged due process violation arising from the alleged failure to investigate . . . grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

---

[6] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

8

Plaintiff's allegations that Defendants Moore and Adams failed to adequately respond to his grievances, without more, are insufficient to state a claim for an inadequate grievance procedure. Accordingly, the Court finds that Defendants Moore and Adams are entitled to summary judgment as to Plaintiff's claim of inadequate responses to grievances.

**C. Conditions of Confinement**

Plaintiff alleges that he was not given outdoor recreation while he was housed in Max E pod, that he was denied recreation based on the conduct of others, that the shower in the pod was "disgusting" and unclean, that there was no access to a toilet in the dayroom during his daily hour of recreation, and that he was denied commissary privileges.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* at 875. However, courts are not

9

concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

With this framework in mind, the Court will separately address each of Plaintiff's conditions of confinement claims.

   1. **Recreation**

Plaintiff alleges that he was not given outdoor recreation while he was housed in Max E pod. On July 20, 2016, Plaintiff submitted a grievance claiming that he was not given outdoor recreation. (ECF No. 39-4, p. 10). On August 3, 2016, Plaintiff submitted a grievance alleging that his recreation time was taken away for two days because of the conduct of another inmate. (ECF No. 39-4, p. 16). The record indicates Plaintiff was held in protective custody for approximately three months—from July 9, 2016, until he was released on October 17, 2016.

A constitutional violation exists if Defendants were deliberately indifferent to Plaintiff's exercise needs. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* Courts reviewing an inmate's lack of exercise claim should consider factors such as: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Id.* Lastly, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation." *White v. Holmes*, 21 F.3d 277, 281 (8th Cir. 1994).

The Eighth Circuit has held that no outside recreation for three months is insufficient to demonstrate deliberate indifference to an inmate's health. *See Thompson v. Stovall*, 2013 WL 501437, at *6 (W.D. Ark. Jan. 18, 2013) (citing *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002)). Although there is no evidence in the record indicating the size of Plaintiff's cell, it is undisputed that,

except for the two days that Plaintiff was denied recreation during his incarceration at the MCDC, Plaintiff had the opportunity to exercise for one hour a day outside of his cell in the dayroom. (ECF No. 39-1, p. 1). Consequently, the Court finds Plaintiff's deprivation of exercise claims are not sufficiently serious to establish a constitutional violation. *See Wishon*, 978 F.2d at 449 (finding that forty-five minutes of out-of-cell recreation time per week did not violate the Eighth Amendment rights of an inmate in protective custody where prison records showed inmate had the opportunity to exercise in his cell, and had other opportunities to be out of his cell). Accordingly, Plaintiff's claims regarding inadequate recreation fail as a matter of law, and Defendants Moore and Adams are entitled to summary judgment on this issue.

### 2. Sanitation Claim

Plaintiff alleges in his initial Complaint that he was subjected to unlawful conditions of confinement because the shower area was "disgusting" and had not been cleaned. (ECF No. 1, p. 3). Although Plaintiff does not specifically mention the unclean shower in his Amended Complaint, he alleges he was "subjected to living conditions that were infested with human feces, urination, spit, mucus and the likes, that exposed Plaintiff to an increased risk of disease and posed an unreasonable risk of serious damage to future health." (ECF No. 19, p. 4). Giving Plaintiff the benefit of all reasonable inferences, the Court will treat Plaintiff's additional allegations of unsanitary conditions as relating to the shower area in Max E pod.[7]

"[I]nmates are entitled to reasonably adequate sanitation [and] personal hygiene . . . particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017 (8th Cir. 2012) (citing *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). "Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months." *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958

---

[7] The Court notes that Plaintiff filed a grievance relating to a "disgusting" shower but did not file any grievances alleging he was exposed to feces, urination, spit, or mucus. (ECF No. 39-4, p. 11).

11

(8th Cir. 1994) (internal quotation marks omitted); *see also Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (holding that where the plaintiff was subjected to an "overflowed toilet in his cell for four days," such "allegations regarding 'raw sewage' d[id] not rise to a level of constitutional significance' because plaintiff 'did not allege that he was exposed to disease or suffered any other consequences of the exposure' and was 'offered an opportunity to flush the toilet and to clean up the mess but he declined'"); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (finding no Eighth Amendment violation where a prisoner was confined in an unsanitary cell for eleven days and noting that cleaning supplies were available to the prisoner).

Although reasonably adequate sanitation is a basic identifiable human need, the Court finds no evidence that Defendants Moore or Adams were deliberately indifferent to Plaintiff's health or safety. Plaintiff does not dispute that "[i]nmates are responsible for cleaning their own area [and] [t]hey are provided cleaning supplies any time they request it." (ECF No. 39-1, p. 2).[8] Plaintiff was free to request cleaning materials and use them as he saw fit. Moreover, Plaintiff has not alleged that he suffered any injury resulting from exposure to the alleged unsanitary conditions in the shower. The Court finds any discomfort Plaintiff may have suffered while showering in Max E pod at the MCDC to be *de minimis*, and as a result, does not rise to the level of a constitutional deprivation. *See Smith*, 87 F.3d at 268. Accordingly, Plaintiff's conditions of confinement claims relating to the shower in Max E pod fail as a matter of law and Defendants are entitled to summary judgment on this issue.

### 3. Limited Access To Toilet

Plaintiff alleges that Defendants Moore and Adams violated his constitutional rights because Plaintiff did not have access to a toilet for one hour each day during recreation in the dayroom at the MCDC. Defendant Moore and Adams assert that during the hour of recreation, inmates were free to

---

[8] Instead, Plaintiff argues that such duties should not be delegated to inmates. (ECF No. 55, p. 2).

use the restrooms in their cells if needed. (ECF No. 39-1, p. 1). Plaintiff disputes this claim and states that the cell doors were locked during recreation time.

Even if Plaintiff did not have access to a toilet for one hour each day, a "momentary deprivation of the right to use the bathroom, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation." *Revels*, 382 F.3d 870 (8th Cir. 2004). The record reflects that Plaintiff had access to a toilet at all times, with the possible exception of one hour a day during recreation. Plaintiff has not alleged that he suffered any physical harm or was exposed to a serious risk of contamination from being denied access to a toilet for one hour a day. Accordingly, Plaintiff's claims related to limited access to a bathroom fail as a matter of law and, thus, Defendants Moore and Adams are entitled to summary judgment on this issue.

### 4. Commissary Privileges

On July 27, 2016, Plaintiff filed two grievances concerning the denial of commissary privileges. (ECF No. 39-4, pp. 12-13). However, the next day, Plaintiff filed a third grievance which states: "Please ignore the grievance about me not getting my commissary, I received my commissary last night after I went into my cell, and was away from the kiosk." (ECF No. 39-4, p. 14). Despite this grievance, Plaintiff has asserted a claim alleging he was denied commissary privileges.

When a prison provides for an inmate's basic necessities, he has "no protected property or liberty interest in commissary privileges." *Scott v. Burl,* 2018 WL 1308963, at *6 (E.D. Ark. Feb. 2, 2018). "Inmates have no constitutional right to purchase items from the prison commissary." *Vega v. Rell*, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011).

Plaintiff has not specified when he was denied commissary privileges or for what period he was without the privileges. In fact, his final grievance regarding the commissary issue appears to establish that he was, in fact, not denied any privileges. In addition, there is no evidence that Plaintiff was forced to go without food or other basic human needs while he was incarcerated at the MCDC.

13

Accordingly, Plaintiff's claims that he was denied commissary privileges fail as a matter of law and Defendants Moore and Adams are entitled to summary judgment on the issue.

**D. Deliberate Indifference**

Plaintiff alleges Defendants Moore and Adams were deliberately indifferent to his serious medical needs when Plaintiff's medication for mental illness was discontinued.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). The duty to provide medical care encompasses a detainee's psychiatric needs. *See Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants Moore and Adams acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotation marks omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Defendants do not dispute that Plaintiff's mental illness is a serious medical condition. Indeed, the record demonstrates Plaintiff's condition was regarded to be serious enough to warrant prescription medication at the MCDC until he pleaded guilty to disciplinary charges related to hoarding the medication. Accordingly, the Court assumes for purposes of this opinion that Plaintiff had a serious medical condition. The question before the Court now becomes whether Defendants Moore or Adams' actions, or lack thereof, rose to the level of a constitutional violation.

On September 19, 2016, Plaintiff entered a plea of guilty to being in possession of stolen property, possession of an item not authorized for retention, and misuse of authorized medication. (ECF No. 52-2, p. 20). As a result of his guilty plea, the MCDC Disciplinary Committee ordered that Plaintiff be moved to segregation for thirty days during which time he also lost his commissary, visitation, and mail privileges. *Id.* That same day, Separate Defendant King entered a notation on Plaintiff's medical progress notes which reads in part: "due to the fact that inmate Blake is not taking his prescribed medication as directed and is hoarding and using them as currency, [Nurse Practitioner] Foltz directs the medications to be discontinued." (ECF No. 35-7). On September 19, 2016, Plaintiff's medications were discontinued.

Four days after his medications were discontinued, Plaintiff submitted a medical request stating he thought he was having a mental breakdown and requested medical attention. (ECF No. 53-2, p. 2). Separate Defendant King made no effort to contact any psychiatric medical personnel or examine Plaintiff to see if he was suffering any side effects from being taken off his medications. Instead, he responded in writing; "You chose to refuse your meds after being caught hoarding your medication for sale. Your medication was discontinued due to this. It will not be restarted." *Id.* On September 24, 2016, Plaintiff filed a grievance against Separate Defendant King, alleging that he had denied Plaintiff proper medical attention. (ECF No. 53-2, pp. 5-6). Plaintiff did not file any additional grievances regarding denial of medical care after this date.

15

Plaintiff alleges that Defendant Moore is responsible for the overall operation of the MCDC, that Defendant Adams is responsible for the day-to-day operation of the MCDC, and that both Defendants Moore and Adams are responsible for the implementation and enforcement of all policies, rules, and guidelines. (ECF Nos. 1, 19). However, it is undisputed that the MCDC contracts with Southern Health Partners—Separate Defendant King's employer—to provide all medical care to incarcerated inmates. (ECF No. 39-1, p. 2). Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 105. However, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

Here, the record reveals that neither Defendants Moore nor Adams were involved in the discontinuation of Plaintiff's medications in any way. Instead, it was either Separate Defendant King or Nurse Practitioner Foltz—both employees of Southern Health Partners—who decided to stop the medication.

Other than Plaintiff's bare allegations that Defendants Moore and Adam denied him medical care, there is nothing in the record to suggest that Defendants Moore or Adams were aware that an employee of Southern Health Partners was going to discontinue Plaintiff's medications or that Defendants Moore or Adams had any part in Separate Defendant King's subsequent refusal to reinstate the medications. Accordingly, there is no evidence that Defendants Moore and Adams were deliberately indifferent to Plaintiff's medical needs. Therefore, Defendants Moore and Adams are entitled to summary judgment on Plaintiff's claim of inadequate medical care.

### E. Official Capacity Claims

Plaintiff also sues Defendants Moore and Adams in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants Moore and Adams are treated as claims against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff has failed to produce evidence of any policy or custom of Miller County that contributed to the alleged violation of Plaintiff's constitutional rights. Plaintiff's allegations related to his official capacity claims merely consist of a recitation of the ways he believes his constitutional rights were violated. This is insufficient to survive summary judgment. Accordingly, Plaintiff's official capacity claims against Defendants Moore and Adams fail, and Defendants Moore and Adams are entitled to summary judgment as to the same.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants Moore and Adams' Motion for Summary Judgment (ECF No. 37) should be and hereby is **GRANTED**.

Plaintiff's claims against Defendants Moore and Adams that he failed to administratively exhaust his administrative remedies for are hereby **DISMISSED WITHOUT PREJUDICE**.[9]  All other claims against Defendants Moore and Adams are hereby **DISMISSED WITH PREJUDICE**.[10]

In accordance with the Court's opinion dated July 11, 2018 (ECF No. 59), Plaintiff's claims against Separate Defendant King for denial of medical care and retaliation remain for further proceedings.

**IT IS SO ORDERED**, this 7th day of August, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[9] These claims include: (1) alleged lockdown for 23 hours a day; (2) lack of access to television or newspapers; (3) no visitation privileges; (4) rat and roach infestations; (5) no windows; (6) pre-trial inmates housed with sentenced inmates; (7) misdemeanor inmates housed with felony inmates; (8) inadequate selection and training of employees and contractors for recreation, sanitized living conditions and dispensing of medication; and (9) interference with medical treatment as a punitive measure.

[10] Because the Court did not find any constitutional violations, it is unnecessary to address the issue of qualified immunity.